1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA        JS-6

| | |
|---|---|
| NELIDA VIND, on behalf of herself and all others similarly situated | CASE NO. CV 07-3564 CAS (FMOx) |
| Plaintiff, | **FINAL SETTLEMENT APPROVAL ORDER AND JUDGMENT** |
| v. | **Hearing** |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and DEN-MAT CORPORATION LONG TERM DISABILITY FOR ALL EMPLOYEES, | April 4, 2011 Time: 10:00 a.m. Courtroom:  5, Second Floor |
| Defendants. | |

Following a hearing on January 10, 2011, this Court entered its *Order of Preliminary Approval of Class Action Settlement and Related Orders* (*Doc. No. 199*), ("Preliminary Approval Order"), preliminarily approving the *Settlement and Release Agreement* entered into by and on behalf of the parties in the above-captioned action ("Settlement"), directing that notice of the Settlement be mailed to the Settlement Class members, scheduling a hearing to determine whether the Settlement is fair, reasonable, adequate, in the best interests of the Settlement Class, and free from collusion, and scheduling a hearing to contemporaneously consider a motion by class counsel for an award of attorneys' fees, litigation expenses, and a class representative incentive pursuant to the Settlement.

The Court has considered: (i) the proposed Settlement; (ii) Plaintiff's *Motion for Final Approval of Class Action Settlement and Related Orders* and supporting papers; (iii) Plaintiff's *Motion for Award of Attorneys' Fees, Litigation Expenses, and Class Representative Incentive* and supporting papers;  (iv) the separate request by Defendants, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA ("Prudential") and DEN-MAT CORPORATION LONG TERM DISABILITY FOR ALL EMPLOYEES ("Den-Mat Plan"), (collectively, "Defendants"), for final settlement approval and entry of judgment, pursuant to the Settlement; (v) Defendants' non-opposition to an award of attorneys' fees, litigation expenses, and a class representative incentive, up to the amounts provided for by the Settlement;  (vi) the entire record in this action, including but not limited to the points and authorities, declarations, and exhibits submitted in support of preliminary approval of the Settlement, (*Doc. Nos. 192-194*); (vii) the absence of any objections by the Settlement Class members to the Settlement; (viii) the absence of any notices of intention to appear, or requests to appear, from the Settlement Class members; (ix) the representations and arguments of Class Counsel and counsel for Defendants at the hearing on this motion; (x) this Court's experiences and observations while presiding over this matter; and (xi) the relevant law.

On these bases, and based upon the findings of fact and conclusions of law below and implicit in this Order, and in the Court's prior Preliminary Approval Order (*Doc. No. 199*), and good cause appearing, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**, as follows:

1.      **Definitions:**  The capitalized terms used in this Final Approval Order shall have the meanings and/or definitions given to them in the Agreement, or if not defined therein, the meanings and/or definitions given to them in this Final Approval Order.

2.      **Jurisdiction**:  Plaintiff, Defendants, and all members of the Settlement Class have submitted to the jurisdiction of the Court for purposes of the Settlement. The Court has personal jurisdiction over Plaintiff, Defendants, and the Settlement Class members.  The Court has subject matter jurisdiction to release all claims and causes of action as set forth in the Settlement, to dismiss the above entitled action, ("Action"), with prejudice, in its entirety, and to enter judgment in the action.  The Court has subject matter jurisdiction to approve the Settlement.

3.      **Findings in Support of Final Settlement Approval:**  The Court finds that the Settlement was not the product of collusion, that there is no indicia of unfairness, and that the Settlement is fair, reasonable, and adequate to the Settlement Class in light of the complexity, expense, and likely duration of the litigation, and the risks involved in certifying a class, establishing liability and remedy, and in maintaining the Action as a class action through trial and appeal.  The Court finds that the Settlement represents a fair and complete resolution of all claims asserted in a representative capacity on behalf of the Settlement Class and should fully and finally resolve all such claims.  In support of these findings, the Court further specifically finds that:

A.     There is no evidence of collusion.  The proposed Settlement, as set forth in the Agreement, resulted from extensive arms-length negotiation.  The action was extensively and vigorously litigated prior to settlement, (as more fully described below).  Defendants' challenges to the pleadings and class representative's standing were litigated and decided, extensive discovery was completed, the class certification motion was fully briefed, and that motion was on the eve of hearing before a Settlement was reached.  The Parties engaged in arm's length settlement negotiations taking place over a period of months before reaching the proposed Settlement.

B.     The Settlement provides substantial benefits for every single member of the Settlement Class, without requiring any Settlement Class member to affirmatively participate in a claims process.  No portion of the substantial class relief will be consumed by attorneys' fees, litigation expenses, notice and settlement administration expenses, or the class representative's incentive, since such amounts are all separately provided for.

The Action challenges the adequacy of Prudential's claims handling procedures with respect to the application of California Workers' Compensation "offsets" to reduce the amount of benefits otherwise payable under ERISA group long-term disability policies fully insured by Prudential.  Plaintiff alleges that Prudential's existing claims handling guidelines do not permit application of offsets for California Workers' Compensation permanent disability benefits, but that Prudential's claims handling procedures are inadequate to ensure that such offsets are not applied.  Prudential denies any inadequacy of its existing claims handling procedures in this respect.

The proposed Settlement provides for injunctive relief which will augment Prudential's existing claims handling procedures to prevent the occurrence of future California Workers' Compensation permanent disability offsets.  These additional

procedures are set forth in Appendix A to the Agreement, and are incorporated here by reference.  Said augmented claims handling procedures will apply, going forward, to each ERISA long-term disability group policy fully insured by Prudential providing coverage for any present or future claimant receiving California Workers' Compensation permanent disability benefits, including any of the Settlement Class members' group policies.

Further, for each Settlement Class member, Prudential will review all past California Workers' Compensation offsets from June 1, 2001 (the date six years prior to the filing of the Action) through the effective date of the settlement.  Review will be conducted under the augmented claims handling procedures provided by the Settlement.  For any California Workers' Compensation permanent disability offsets applied from June 1, 2004 through the effective date of the settlement, Prudential will pay a 100% refund.  For any California Workers' Compensation permanent disability offsets applied from June 1, 2001 through May 31, 2004, Prudential will pay a 25% refund.  (In each case, the availability and amount of such Settlement payments are subject to any other available offsets, credits, or releases). Each Settlement Class member will be given clear notice of Prudential's review determination, notice of the right and a fair opportunity to dispute that determination, and (if a dispute is unresolved) notice of the right to appeal that determination, (first administratively and then in court in a separate legal action).

The actual amount of these monetary Settlement benefits cannot be known until Prudential completes the claims review process under the Settlement.  Based on a review of a random cross-section of files and Settlement Class claims data produced by Prudential, however, Class Counsel have projected that the amount of permanent disability offsets to be refunded to the Settlement Class will be approximately $3.2 million.

All Settlement benefits (both the injunctive relief and, where applicable, payments) are provided upon the finality of the Settlement, without any requirement

that the Settlement Class member submit a claim form or otherwise affirmatively participate in any claims process.

No portion of the monetary settlement relief is consumed by attorneys' fees, litigation expenses, notice expenses, settlement administration expenses, or the class representative's proposed incentive award, since such amounts are all separately provided for and (subject to stipulated maximum amounts and approval by the Court as reasonable) will be paid by Prudential.

The Settlement Class encompasses the entire putative class as alleged in the operative First Amended Complaint in the action, for the period from the outset of the class period (six years prior to the filing of the action – June 1, 2001) through the date of the Court's Preliminary Approval Order, January 10, 2011, (*Doc. No. 199*). Only those Settlement Class members who have granted Prudential a general release of all claims, subject to review by Class Counsel, are excluded from the Settlement Class.

The Agreement provides for the dismissal, with prejudice, of the action in its entirety, including the benefits claim under 29 U.S.C. §1132(a)(1)(B) asserted in the First Amended Complaint on behalf of a putative subclass of insureds under the Den-Mat Plan.  Based on the declaration of Scott Hall (Ex. 3 to the *Gianelli Declaration* submitted in support of preliminary settlement approval, *Doc. No. 193-1*),  Ms. Vind is the only such putative subclass member during the class period from June 1, 2001 forward, and the Prudential group long term disability contract issued to Den-Mat was terminated in April 2005.

C.     Settlement was reached in this action with the benefit of extensive litigation.  Among other things, Plaintiff filed a Complaint and First Amended Complaint; Defendant filed several motions to dismiss, a motion for summary judgment, and a motion for partial judgment on the pleadings.  Ms. Vind's claim was remanded to the ERISA Claims Administrator.  The parties pursued extensive

discovery and related proceedings to compel and/or prohibit discovery.  Finally, Plaintiff sought to certify a class, with briefing fully completed prior to presenting the proposed Settlement to the Court.  Based upon the extent of these completed law and motion proceedings, including the full briefing of the class certification motion, the Parties were adequately informed of the legal bases for their respective claims and defenses herein, and capable of balancing the risks of continued litigation and the benefits of the proposed Settlement.

D.    Before reaching the Settlement, the Parties also conducted substantial discovery.  Plaintiff reviewed and analyzed Prudential's existing claims handling guidelines and procedures regarding Workers' Compensation offsets in California, Ms. Vind's policy documents, her expansive claims file, sixty-eight additional randomly-selected claims files for Settlement Class members, and preliminary class data.  An expert statistician and a disability claims handling expert were both retained by Plaintiff to assist in the review and analysis of the selected claims files.  In total, more than 10,000 pages of materials were produced, reviewed, and analyzed in detail.  Based upon the extent of this completed discovery, the Parties were adequately informed of the evidentiary bases for their respective claims and defenses herein, and capable of balancing the risks of continued litigation and the benefits of the proposed Settlement.

E.    The Settlement Class is and was at all times adequately represented by Plaintiff and Class Counsel.  Class Counsel have fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably available to the Settlement Class members.  Both Class Counsel and Defendants' Counsel are highly experienced trial lawyers with specialized knowledge in complex insurance class action litigation.  Class Counsel and Defendants' Counsel are capable of properly assessing the risks, expenses, and

duration of continued litigation, including at trial and on appeal.  Class Counsel and Defendants' Counsel have agreed that the proposed Settlement represents a fair and reasonable resolution to this matter in light of the various risks and costs to the respective Parties of continued litigation.

F.     As further addressed below, through the mailing of the Settlement Notice in the form and manner ordered by this Court, the Settlement Class has received the best practicable notice of the certification of the Settlement Class, the Settlement, and of their rights and options as Settlement Class members. Said notice fully satisfied all notice requirements under the law, including all due process rights under the U.S. Constitution.

G.     After full, fair, and effective notice, the response of the Settlement Class to this Action, and to the Settlement (including Class Counsel's application for an award of attorneys' fees, litigation expenses, and the class representative's incentive), strongly favors final approval of the Settlement.  The Settlement Administrator has mailed 914 Settlement Notices, to each unique Settlement Class member, explaining the Settlement, certification of the Settlement Class, the Settlement's benefits, and Settlement Class members' rights to object and/or request to appear.  No objections and no requests to appear have been filed with the Court or received by the Settlement Administrator or the Parties.

**4.     Conditional Certification of the Settlement Class for Settlement Purposes Only:**  For purposes of the proposed Settlement only, the Court hereby certifies the Settlement Class, as defined in the Agreement and set forth herein, pursuant to *Federal Rules of Civil Procedure*, Rule 23(b)(2).  The Court appoints Plaintiff, Nelida Vind, as class representative and the law firms of Gianelli &

Morris, Ernst Law Group, and Mattison Law Firm as co-Class Counsel for the Settlement Class.  The Settlement Class is defined as:

> "All California residents who have claimed disability benefits under long term disability group contracts that have been fully insured by Prudential and are governed by ERISA, against whom any offset was applied for California workers' compensation benefits on or after June 1, 2001 and on or before the Preliminary Approval Date.  Excluded from the Settlement Class are those claimants who have signed a previous general release of claims against Prudential."

The Settlement Class hereby certified is "mandatory," meaning no right to request exclusion from the Settlement Class has been or is to be afforded.

The Court finds that the foregoing Settlement Class satisfies all requirements of *Federal Rules of Civil Procedure*, Rule 23(a) and Rule 23(b)(2), and certification of a "mandatory" class is appropriate, for the reasons set forth in the points and authorities previously-submitted in support of preliminary settlement approval, (*Doc. No. 192*).  Without limiting the foregoing, the Court finds that the rights and interests of the Settlement Class members have been and will be adequately protected by the proposed form of Settlement Notice (*see below*), the Court's fairness review (including Settlement Class members' right to object to the proposed settlement and/or request leave to appear at the fairness hearing), and by Settlement Class members' rights to dispute and appeal Prudential's claims review determination with respect to past offsets and any settlement payments (including in a separate legal action if the dispute cannot be resolved administratively).  For these reasons, and those stated in support of certification of the Settlement Class in the preliminary approval motion (*Doc. No. 192*), the Court finds that conditional certification of the Settlement Class (for settlement purposes only) is appropriate.

**5.** **Settlement Notice**:  The Court finds that notice of the Settlement has been provided to the Settlement Class in the form and manner required by the Settlement and the Preliminary Approval Order.  The Settlement Notice provided fair and effective notice to the Settlement Class of this lawsuit, the certification of the Settlement Class, the Settlement and terms thereof (specifically including those terms relating to the class recovery, the claims and parties released, the provisions for attorneys' fees, litigation expenses, and a class representative incentive, Class Counsel's intention to petition for an award of such fees, expenses, and incentive in the amounts provided by the Settlement, the time and place of the Final Approval/Fairness Hearing, and Settlement Class members' rights to object to the Settlement and to appear).

Further, based upon the declaration provided by the Settlement Administrator, notice has been highly effective.  The Settlement Class database was comprised of 929 mailing records provided by Prudential from its records.  These records were updated through the National Change of Address Database to update any addresses on file with the United States Postal Service.  Using the resulting data, Settlement Notices were mailed to each of the 914 unique Settlement Class member addresses identified.  Of the 106 notices initially returned as undeliverable, 96 notices were re-mailed to alternate addresses obtained from the United States Postal Service or a third-party locator service.  As such, only 10 Settlement Notices are currently known to have been undeliverable.  To assist the Settlement Class members in understanding the lawsuit, the Settlement, and their rights under the Settlement, and to respond to any class inquiries, the Settlement Administrator has established, maintained, and operated regular mail, live-operator toll-free telephone, electronic mail, and web support services, as required by the Settlement.

Said notice procedures: (i) constitute reasonable and best practicable notice; (ii) constitute notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the terms of the Settlement, their rights, and that they

will be subject to the Court's jurisdiction for Settlement purposes; (iii) constitute due, adequate, and sufficient notice to all persons entitled to receive such notice; and (iv) meet the requirements of the United States Constitution, the *Federal Rules of Civil Procedure*, and all other applicable laws.

6. **Notices Pursuant to 28 U.S.C. § 1715:**  Based on the requirements of the Settlement and the declarations submitted in support of preliminary and final approval, the Court finds that all notices and requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, have been satisfied.  Prudential's provision of CAFA Notices is attested to by the Declaration of S. Bradley Perkins (*Doc. No. 200*).  The proposed Settlement was filed on December 13, 2010, (*Doc. No. 193-1*, pp. 11-80).  On December 20, 2010, Prudential served the notices required by 28 U.S.C. §1715(b), (*Doc. No. 200*), which included a copy of the Settlement and the other documents required by CAFA.  More than ninety (90) days have passed since the service of the foregoing December 20, 2010 CAFA notices.  No objection or response to the Settlement has been filed by or received from any federal or state official, including any recipient of the foregoing CAFA notices.  No federal or state official, including any recipient of the foregoing notices, has appeared or requested to appear at the Fairness Hearing.

7. **Final Settlement Approval**:  Each and every term and condition of the Settlement, and the Settlement as a whole, should be and are approved.  The Settlement, in its entirety, is hereby made a part of this Final Approval Order by reference.  A true and correct copy of the Settlement appears in the Court's record as **Plaintiff's Exhibit 1** submitted in support of final settlement approval.

8. **Release:**  The Court orders that the Released Parties are hereby forever released from and discharged of all further liability to Plaintiff and the Settlement

Class, and each of them, as to all Released Claims, as set forth in the Settlement. The "Release and Waiver" set forth in the Settlement is reprinted here and expressly approved by the Court.  If there is any mistake in transcription, the provisions of the "Release and Waiver" in the Settlement shall control.

[*Start reprinted text of Release and Waiver*]

## ARTICLE VIII

## RELEASE AND WAIVER

**8.01   Release.**  Subject to the limitations stated in this Article VIII, upon full execution of this Agreement, issuance of the Final Approval Order by the Court, and occurrence of the Effective Date, in consideration of the benefits and other consideration set forth above, Plaintiff and each and every member of the Settlement Class shall automatically and without further action or notice be deemed to have irrevocably and unconditionally released, waived, and forever discharged the Released Parties from any and all liability with respect to the Released Claims.

**8.02   Released Parties.**  Subject only to those limitations specifically stated in this Article VIII, Released Parties is defined as:  Prudential, Den-Mat, the Den-Mat Plan, the ERISA long-term disability plans fully insured by Prudential in which the Settlement Class members participate, the plan administrator for the Den-Mat Plan, the plan administrators for the ERISA long-term disability plans fully insured by Prudential in which Settlement Class members participate, and their present, former and future parent, sister, subsidiary and affiliated companies, their past, present and future officers, directors, fiduciaries, administrators, employees, servants, attorneys, insurers, legal and beneficial shareholders, partners, privies, representatives, assigns, and agents.

**8.03   Released Claims.**  Subject only to those limitations specifically stated in this Article VIII, Released Claims is defined as:

a.      Any and all past, present or future claims, actions, causes of action, lawsuits, suits, insurance department complaints, attorney general complaints, petitions, demands in law or equity, or any allegations of liability for damages, debts,

restitution, trebling, punitive or exemplary damages, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses whatsoever, whether known or unknown, that Plaintiffs and the Settlement Class now have, had, or may hereafter claim to have, in law or equity, of every nature and kind whatsoever, that arise out of the allegations in the Action, or that could have been raised in the Action and arise from the same factual predicate as the allegations and claims asserted in the Action, whether or not brought directly, indirectly, on a representative basis, or otherwise, and regardless of whether those claims are based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, including without limitation claims pursuant to 29 U.S.C. §1132(a)(1)(B) and §1132(a)(3) of ERISA.

b.      Plaintiff and the Settlement Class expressly waive and assume the risk of any and all claims which exist as of this date, but of which Plaintiff and the Settlement Class do not know or suspect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect Plaintiff's or a Settlement Class member's decision to enter into this Agreement.  This Agreement includes all Released Claims, of every nature and kind whatsoever, which the Class and the Class Representatives may have against the Released Parties, known or unknown, suspected or unsuspected, past or present, despite the fact that California *Civil Code* §1542 may provide otherwise.  Plaintiff and the Settlement Class expressly waive any right or benefit available in any capacity under the provisions of §1542, which provides as follows:

A general release does not extend to the claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with debtor.

**8.04   Limitations on Scope of the Release.**  Notwithstanding anything else in this Article VIII:

a.      Nothing shall preclude any action or proceeding to enforce the terms of this Agreement or to enforce any Court order awarding attorneys' fees, litigation expenses, or Plaintiff's incentive.

b.      No claims are released with respect to any rights or obligations under any insurance plan or policy other than the Settlement Class members' ERISA long-term disability plans fully insured by Prudential.

13

c.      No claims are released with respect to any offsets applied, or which may be applied, to reduce benefits, other than Workers' Compensation Permanent Disability Offsets.

d.      No claims are released with respect to the termination or suspension of long term disability benefits based on whether the Settlement Class member satisfies the definition of a qualifying disability.

e.      No claims are released with respect to the calculation of pre-disability earnings in determining the amount of any claimant's gross disability benefit under any plan in which the Settlement Class members participate.

f.      No claims are released with respect to any benefits claim by any Settlement Class member under any insurance plan or policy, other than those benefits claims for which the claims review pursuant to §§3.05-3.09, *supra*, is provided;

g.      Settlement Class members who continue to be insured by Prudential shall have all rights as specified by the express terms of their respective plans, ERISA, or other such policies/plans, except as those rights are specifically modified by this Settlement.

h.      Any claim by any Settlement Class member or his or her attorneys pursuant to ERISA, or any other applicable law, for an award of attorneys' fees and/or litigation expenses in connection with any appeal pursuant to §3.09, *supra*, is not released, except by Plaintiff individually, who releases such claims.

[*End reprinted text of Release and Waiver*]

**9.      Permanent Injunction:**  The Court hereby permanently enjoins Plaintiff and each and every Settlement Class member from filing, commencing, prosecuting, intervening in, maintaining, or receiving any benefits from any lawsuit or proceeding against any Released Party, with respect to any Released Claim. Nothing in this paragraph, however, shall require any Settlement Class member to take any affirmative action with regard to any other pending class action litigation in which they are solely absent class members.  The Court finds that issuance of this

permanent injunction is necessary and appropriate in the aid of the Court's jurisdiction over the Action and its Judgment.

**10.     Attorneys' Fees and Litigation Expenses:**  The Court finds that Class Counsel are entitled to an award of reasonable attorneys' fees and litigation expenses incurred in connection with the Action and in reaching this Settlement.  The Court finds that an award of reasonable attorneys' fees and litigation expenses, as provided for herein, is appropriate based on the contractual agreement to pay such fees and expenses set forth in the Settlement and pursuant to ERISA, 29 U.S.C. §1132(g)(1).

The Court finds to be reasonable, and awards to Class Counsel, attorneys' fees in the amount of $875,000.00 and litigation expenses in the amount of $38,324.13, to be paid by Prudential as provided in the Settlement.  The Court further orders that in accordance with paragraph 4.02 of the Settlement, in addition to the foregoing award of attorneys' fees and  litigation expenses, Prudential shall pay all reasonable costs of the Settlement Administrator associated with the Settlement Notice and the administration of the Settlement.  This award of attorneys' fees and litigation expenses shall be the sole reimbursement to which Class Counsel is entitled from Defendants, or any Released Party.

Defendants do not join in Class Counsel's application for an award of attorneys' fees and litigation expenses, nor join in requesting the related findings herein, (paragraphs 10-11).  Pursuant to the Settlement, however, and in accordance with the Settlement's terms and conditions, Defendants do not oppose an award of attorneys' fees and litigation expenses up to these amounts.

**11.     Findings in Support of Attorneys' Fees and Litigation Expenses Award:**  In support of the foregoing award of attorneys' fees and litigation expenses, the Court finds as follows:

**A.** The following hourly billing rates applied for by Class Counsel are reasonable in light of the complexity of this litigation, Class Counsels' reputation, experience, and competence, and prevailing billing rates for comparably complex work by comparably qualified counsel in this forum:

1. For Robert S. Gianelli, $750.00 per hour;

2. For Raymond E. Mattison, $750.00 per hour;

3. For Don A. Ernst, $750.00 per hour;

4. For Chris D. Edgington, $575.00;

5. For Terry Kilpatrick, $575.00 per hour;

6. For Jully C. Pae, $500.00 per hour;

7. For JoAnn Victor, $450.00 per hour;

8. For future attorney time in connection with settlement administration, $410.00 per hour, as further described below.

The reasonableness of these billing rates is supported by the recent order of Honorable Janis L. Sammartino, in the matter, *Iorio, et al. v. Allianz Life Insurance Company of North America*, S.D. Cal. Case No. 05-CV0633 JLS (CAB), approving these billing rates as reasonable for attorneys Gianelli, Mattison, Ernst, Edgington, Pae, and Victor, for comparable work in comparably complex insurance class action litigation.   The reasonableness of these billing rates is further supported by the declarations of these billing attorneys (**Pl. Exs. 4-9**), and by the submitted declaration of Gary Greenfield regarding his study of other attorneys' fee awards and published industry billing rates for comparably qualified counsel performing comparable work, (**Pl. Ex. 10**).

With respect to future attorney time in connection with settlement administration, Class Counsel have provided an estimate in their submitted declarations, based upon the administration of past class action settlements (including cases with a comparable class demographic) of the attorney time which will be incurred for this

purpose.  The Court approves as reasonable the requested $410 per hour billing rate for such work.

**B.**     The $195.00 hourly billing rate for work performed by certified paralegals is reasonable in light of the experience and qualifications of these non-attorney billers.  The reasonableness of this billing rate is supported by a recent fee awards for work performed by these paralegals in the relevant market, in comparable litigation, and the submitted declarations of counsel.  Paralegal time, which is normally billed to fee-paying clients, is properly included and reimbursable under a lodestar analysis.  *See, e.g.*, *United Steelworkers v. Phelps Dodge Corp.*, 896 F. 2d 403, 407-08 (9th Cir. 1990).

**C.**     The time declared to have been expended by Class Counsel, as set forth in the motion for an award of attorneys' fees and supporting declarations, is reasonable in amount in view of the complexity and subject matter of this litigation, and the skill and diligence with which it has been prosecuted and defended, and the quality of the result obtained for the Settlement Class.  Further, the future time projected to be expended by Class Counsel in connection with administration of the Settlement is reasonable in amount based on the nature of this litigation and Settlement, and Class Counsel's past experience in administering other class action settlements with a similar class composition.

**D.**     Novel and difficult legal and factual questions have been presented by this litigation.  Counsel for all Parties have demonstrated skill in presenting their cases.  This litigation has consumed substantial attorney resources and precluded Class Counsel from other employment opportunities during the approximately 3-3/4 years that the action has been pending.  Class Counsel have represented Plaintiff and the Settlement Class on a purely contingent basis.  The

Settlement represents a fair and reasonable resolution of this action, providing substantial benefits for the Settlement Class both from an individual Settlement Class member's perspective as well as from a class-wide perspective.

**E.**    Class Counsel have incurred out-of-pocket litigation expenses in the amount of $38,324.13.  Said expenses were of a nature typically billed to fee-paying clients, and were reasonable and necessary to the prosecution of this action in light of the extent of proceedings both on and off the Court's docket, the complexity of the legal and factual issues in the case, the amount at stake in this litigation, and the vigorous efforts of counsel for all Parties.

**F.**    Class Counsel's "lodestar" attorneys' fee, representing attorneys' fees reasonably incurred at reasonable billing rates for work of this nature in this legal market, is $830,336.50.   Class counsel have requested award of attorneys' fees, in the full, unopposed amount of $875,000.00, based upon the foregoing lodestar amount and a fee multiplier of just less than 1.054.  Pursuant to the Settlement, Defendants have agreed not to oppose this request.

**G.**    After determination of the lodestar amount, the second requisite step in a lodestar analysis is consideration whether (and to what extent) a multiplier is appropriate.  Application of a fee multiplier is proper if supported by appropriate factors, including the extent of the risks of the litigation, the purely contingent nature of the fee award, and the preclusion of other employment, so long as such factors are not subsumed in the lodestar amount.

Here, Class Counsel consists of two small firms. Cumulatively, the seven lawyers working on the file expended in excess of 1,200 hours over a 3-3/4 year period (96% by just four attorneys), plus more than 100 paralegal hours, and $38,324.13 in out-of-pocket litigation expenses.  This is a very substantial

commitment given the small size of these offices.  Class Counsel's ability to recover fees and expenses in this action was purely contingent upon a successful outcome or settlement.  The contingency risks presented by this litigation were significant, as analyzed in the points and authorities submitted in support of preliminary settlement approval, (*Doc. No. 192*).

In view of the foregoing considerations, which the Court finds are not subsumed in Class Counsel's lodestar amount, the Court concludes that application of the requested fee multiplier of just less than 1.054 (supporting an award of attorneys' fees in the unopposed amount of $875,000.00) is appropriate.  Multipliers ranging from 2-4 (and higher) have been approved in comparably complex litigation, under such circumstances. *See, e.g., Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 255 (2001); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988).  The requested fee multiplier falls on the low end of the reasonable range, based on typical multipliers approved in comparable class action litigation, as confirmed by the submitted 2010 Eisenberg and Miller study. *See,* **Pl. Ex. 11**.

**H.**     A percentage of recovery cross-check on the foregoing lodestar/ multiplier analysis further supports the attorneys' fees award here.  The Ninth Circuit has determined that 25% of the recovery is a "benchmark" award for class action cases, and recognized that fees in the range of 20-30% of total recovery are generally appropriate. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990).  The fee award sought in the present case is reasonable when judged by this standard.

The actual amount of monetary Settlement benefits cannot be known until Prudential completes the claims re-review process created by the Settlement.  Based on a review of a random cross-section of files and the claims data produced by Prudential, however, Class Counsel have projected that the amount of permanent

disability offsets to be refunded to the Settlement Class will be approximately $3.2 million.  Because attorneys' fees ($875,000), litigation expenses ($38,324.13, plus notice and administration expenses), and the class representative incentive ($12,000) are all to be separately paid by Prudential under the Settlement, in addition to the direct class relief, such amounts are properly included in the total recovery in this percentage of recovery cross-check.  The requested attorneys' fee therefore represents 21.2% of the total projected recovery.  This falls on the low end of the generally accepted range, both when measured against the Ninth Circuit 25% benchmark and against actual percentage of recovery figures for comparable class litigation fee awards, as confirmed by the 2010 Eisenberg and Miller study. *See*, **Pl. Ex. 11**.

Further, this cross-check does not take into account the additional value of the Settlement's augmentation of Prudential's claims handling procedures for California Workers' Compensation offsets going forward, which will apply to more than 138 ERISA plans and more than 115,000 individual participants.

**I.**      As part of the Settlement Notice (*see supra*), each Settlement Class member was mailed explicit notice of the amount of fees and expenses requested by Class Counsel here.  There were no objections to the Settlement filed with the Court or received by Counsel, on any basis, including with respect to the Settlement's provisions for fees and expenses.

**J.**      The proposed division of awarded attorneys' fees among Class Counsel, as set forth in Class Counsel's declarations filed in support of final settlement approval, is reasonable and is hereby approved.  The attorneys' fees awarded by this Final Approval Order shall be divided among Class Counsel according to said approved division.

**12.    Class Representative Incentive:**  The Court finds that the requested incentive for Plaintiff, Nelida Vind, in the amount of $12,000.00, on the terms provided in the Settlement is reasonable and is approved.  Prudential shall pay the incentive to Plaintiff as provided in the Settlement. The Court finds that Ms. Vind, despite her own disabilities, has actively participated and assisted Class Counsel in this litigation for the substantial benefit of the Settlement Class, and the requested incentive is an appropriate compensation for the burdens of her active involvement in this litigation.  Defendants do not join in Class Counsel's application for an incentive award for the class representative, nor join in requesting the related findings herein, but pursuant to the Settlement, do not oppose an incentive up to this amount.  After explicit notice of the amount of the incentive to be requested, no Settlement Class member has submitted any objection in this regard.

**13.    Dismissal:**  The First Amended Complaint and this Action, and all claims asserted therein, are dismissed in their entirety, with prejudice, against Plaintiff and each and every member of the Settlement Class, and in favor of Defendants.

**14.    Settlement Administration:**  The Settling Parties are hereby ordered to consummate the administration of the Settlement, including the completion of the Settlement's claims review and issuance of all settlement payments, in accordance therewith and with the terms of this Final Approval Order.

**15.    Entry of Judgment:**  The Court hereby enters Final Judgment in this Action upon the terms and conditions set forth in this Final Approval Order and the Settlement.

**16.    Retained Jurisdiction:**  Without affecting the finality of the Judgment or Settlement, for the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the administration of the Settlement, to ensure the effectuation thereof in accordance therewith and with this Final Approval Order.

Without limiting the foregoing, the Court will retain continuing jurisdiction over all aspects of this case including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and payment of settlement payments provided for by the Settlement,  the adequacy of representation by Class Counsel, the amount of attorneys' fees and litigation expenses to be awarded Class Counsel, the amount of any incentive compensation to be paid to the class representative, any claim by any party relating to the representation of the Settlement Class by Class Counsel, and all other issues related to this Settlement, including any collateral challenges made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement.

**IT IS SO ORDERED.**

April 05, 2011                    _____
                                  Honorable Christina A. Snyder
                                  United States District Court Judge

Proposed order prepared and submitted by:

Robert S. Gianelli, #82116
Jully C. Pae, #233565
GIANELLI & MORRIS, A Law Corporation
626 Wilshire Blvd., Suite 800
Los Angeles, CA  90017
Tel:  213.489.1600; Fax:  213.489.1611
Email:  rob.gianelli@gmlawyers.com
          jully.pae@gmlawyers.com

Don A. Ernst, #65726
Christopher D. Edgington, #169682
Terry J. Kilpatrick, #163197
ERNST LAW GROUP
1020 Palm Street
San Luis Obispo, CA 93401
Tel:  805.541.0300; Fax:  805.541.5168
Email:  de@ernstlawgroup.com
          ce@ernstlawgroup.com
          tk@ernstlawgroup.com

Raymond E. Mattison, #71850
MATTISON LAW FIRM
890 Osos Street, Suite A
San Luis Obispo, CA 93401
Tel:  805.544.1232 Fax: 805.544.3976
Email:  rem@mattisonlawfirm.com

Attorneys for Plaintiff, NELIDA VIND, on behalf of herself and all others similarly situated, and the Settlement Class